# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEITH GRAVES | : | CIVIL ACTION |
| v. | : | |
| MIKE WENEROWICZ, *et al.* | : | NO. 10-1563 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS
CHIEF UNITED STATES MAGISTRATE JUDGE                                                February 28, 2013

Presently before the court is a counseled Petition for a Writ of Habeas Corpus filed by Keith Graves ("Petitioner") pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner serving a twenty-three and one-half (23½) to sixty-five (65) year term of incarceration at the State Correctional Institution located in Frackville, Pennsylvania. Petitioner seeks habeas relief based on claims of ineffective assistance of counsel and violation of his due process right to receive favorable evidence from the prosecution, as protected by *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. The Honorable Petrese B. Tucker referred this matter to the undersigned for preparation of a Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Petitioner not be afforded habeas relief.

## I.  FACTUAL AND PROCEDURAL HISTORY[1]

Petitioner was charged, as a co-conspirator of Todd White, Takey Taylor and David Taylor, for commission of a robbery and other offenses at the Ten Spot Bar on July 28, 2001. *Commonwealth v. Graves*, No. 1452 EDA 2003, slip op. at 1 (Pa. Super. Ct. May 11, 2005) ("2005 Super. Ct. Op."); Petitioner's Memorandum of Law in Support of Petition for Writ of

---

[1] The facts set forth in this background and procedural history were gleaned from Petitioner's Habeas Corpus Petition, his Memorandum of Law, inclusive of all exhibits thereto, the Commonwealth's Response, inclusive of all exhibits attached thereto, Petitioner's Reply Memorandum, inclusive of all exhibits thereto, and the state court record.

Habeas Corpus ("Pet. Mem.") at 5. Petitioner was tried jointly with co-defendants Todd White and David Taylor; Takey Taylor pled guilty prior to trial. 2005 Super. Ct. Op. at 1 n.1. Viewed in the light most favorable to the Commonwealth, the evidence presented at trial was the following:

> Shortly before the Ten Spot Bar was robbed, [Petitioner] was seen standing outside the bar with co-defendants Todd White, Takey Taylor, and David Taylor. Around 1:40 a.m., Todd White entered the bar and ordered a drink. Approximately 10 minutes later, [Petitioner], Takey Taylor and David Taylor approached the owner of the bar wearing masks and brandishing guns. After Takey Taylor beat the owner with a shotgun, the three men forced the owner and the bar's patrons into the basement while Todd White remained upstairs by the front door to keep watch.
> While in the basement, [Petitioner], Takey Taylor and David Taylor beat and pistol-whipped the patrons while forcing them to disrobe and relinquish all of their money and valuables. After Takey Taylor threatened to start shooting unless more money was produced, a female bar patron admitted that she had $400 in her purse which she had left upstairs in the bar. Takey Taylor forced the woman to crawl back upstairs while [Petitioner] and David Taylor remained in the basement with the other bar patrons. After the woman retrieved the money from her purse, Takey Taylor held a gun to her cheek and forced her to perform oral sex on Todd White. Takey Taylor then raped her and returned to the basement. Before she was permitted to return to the basement, she was also raped by Todd White. Around 2:30 a.m., [Petitioner] Takey Taylor, David Taylor, and Todd White left the bar carrying several thousand dollars in cash and jewelry.

*Id.* at 3-4. Petitioner's direct appeal resulted in reversal of his convictions for rape and involuntary deviate sexual intercourse ("IDSI").[2] *Id.* at 2, 4-7. The Superior Court denied re-argument and the Pennsylvania Supreme Court denied allowance of appeal ("*allocatur*") on

---

[2] On direct appeal, Petitioner claimed that: (1) there was insufficient evidence to sustain his convictions for rape and IDSI; (2) the trial court erred by denying a causal challenge during jury selection; (3) the Commonwealth failed to provide him with favorable, material evidence; (4) the trial court erred by omitting a cautionary instruction concerning voice identification testimony; and (5) after-discovered evidence required a new trial. 2005 Super. Ct. Op. at 2.

2

November 30, 2005. Response ("Resp.") at 6. Petitioner did not seek *certiorari* in the U.S. Supreme Court.

On January 5, 2007, represented by current counsel, Petitioner filed a Post Conviction Relief Act ("PCRA") petition.[3] Resp. at 6. On November 9, 2007, the trial court dismissed the petition; on May 14, 2009, the Superior Court affirmed.[4] *Id.* The Pennsylvania Supreme Court denied *allocatur* on February 25, 2010. *Id.* Petitioner did not seek *certiorari* in the U.S. Supreme Court.

On April 8, 2010, Petitioner filed the instant habeas petition. On June 1, 2010, Petitioner submitted his Memorandum of Law in support of the habeas petition, claiming that trial counsel was ineffective for failing to: (1) file a motion to suppress the identification of him as a perpetrator by Micheline Medica and Joseph DeJesus; (2) cross-examine William Fiorillo with his prior descriptions of Petitioner's appearance, which were inconsistent with Petitioner's actual appearance; (3) call Petitioner's sister and mother as alibi witnesses; (4) call Takey Taylor as a defense witness; and (5) request information about Anthony Davis, a person the police had once considered a suspect. Pet. Mem. at 9-41. Petitioner also claims that the prosecution violated *Brady* by failing to disclose information it had obtained concerning its investigation of James Lewis, another person once considered a possible perpetrator. *Id.* at 41-44.

---

[3] The PCRA is codified at 42 Pa. Cons. Stat. Ann. §§ 9541-46.
[4] On PCRA appeal, Petitioner claimed that trial counsel was ineffective for failing to: (1) cross-examine William Fiorillo, regarding discrepancies in his prior descriptions of Petitioner; (2) file a motion to suppress the identification testimony of Micheline Medica and Joseph DeJesus; (3) call Petitioner's mother and sister as alibi witnesses; (4) call Takey Taylor as a defense witness; and (5) request information about the police investigation of Anthony Davis as a possible suspect. *Commonwealth v. Graves*, No. 3195 EDA 2007, slip op. at 3-10 (Pa. Super. Ct. May 14, 2009) ("2009 Super. Ct. Op.").

3

## II. DISCUSSION

### A. The AEDPA Standard of Review

Any claims adjudicated by a state court must be considered under the deferential standard of review established by AEDPA,[5] which provides that this court cannot grant habeas relief on a claim unless the state court's adjudication of it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The habeas statute also provides that any findings of fact made by the state court must be presumed to be correct; Petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court's adjudication of a claim is contrary to U.S. Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth in Supreme Court precedent or if the state court confronts a set of facts which are materially indistinguishable from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). When determining whether a state court's decision was contrary to U.S. Supreme Court precedent, the habeas court should not be quick to attribute error. *See Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). Instead, state court decisions should be "given the benefit of the doubt." *Id.* In this regard, it is not necessary that the state court cite the governing Supreme Court precedent or even be aware of the governing Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*).

---

[5] AEDPA is the Antiterrorism and Effective Death Penalty Act of 1996.

All that is required is that "neither the reasoning nor the result of the state-court decision contradicts" Supreme Court precedent. *Id.*

If, however, the state court does correctly identify the governing U.S. Supreme Court precedent, unreasonable application analysis, rather than contrary analysis, is appropriate. *Williams*, 529 U.S. at 406. A state court decision constitutes an unreasonable application of Supreme Court precedent if the state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the petitioner's case. *Id.* at 407-08. In making the unreasonable application determination, the habeas court must ask whether the state court's application of Supreme Court precedent was objectively unreasonable. *Id.* at 409. The habeas court may not grant relief simply because it believes the state court's adjudication of the petitioner's claim was incorrect. *Id.* at 411. Rather, the habeas court must be convinced that the state court's adjudication of the claim was objectively unreasonable. *Id.* In doing so, the habeas court is limited to considering the factual record that was before the state court when it ruled, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011), and the relevant U.S. Supreme Court precedent that had been decided by the date of the state court's decision. *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). Finally, when deciding whether a state court's application of U.S. Supreme Court precedent was reasonable, it is permissible to consider the decisions of lower federal courts which have applied clearly established Supreme Court precedent. *See Fischetti v. Johnson*, 384 F.3d 140, 149 (3d Cir. 2004). However, the § 2254(d)(1) bar to habeas relief cannot be surmounted solely based upon lower federal court precedent; U.S. Supreme Court precedent must be the authority. *Renico v. Lett*, 130 S. Ct. 1855, 1865-66 (2010).

The Supreme Court, addressing AEDPA's factual review provisions in *Miller-El v. Cockerell*, 537 U.S. 322 (2003), interpreted § 2254(d)(2) to mean that "a decision adjudicated on

the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Id.* at 340. A clear example of an unreasonable factual determination occurs where the state court erroneously finds a fact that lacks any support in the record. *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). In that extreme circumstance, the presumption of correctness under § 2254(e)(1) is also clearly and convincingly rebutted. *Id.* If the state court's decision based on a factual determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is not barred by § 2254(d)(2).[6] *Lambert v. Blackwell,* 387 F.3d 210, 235 (3d Cir. 2004).

B.  **Ineffective Assistance of Counsel Claims**

   1.  **Standard of Review**

Petitioner has advanced five ineffective assistance of counsel claims. Such assertions must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id.* at 689. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In short, the "court must indulge a strong presumption that counsel's conduct falls

---

[6] Within the overarching standard of § 2254(d)(2), a petitioner may attack specific factual determinations made by the state court that are subsidiary to the ultimate decision. *Lambert*, 387 F.3d at 235. Here, § 2254(e)(1) instructs that the state court's factual determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. *Id.* A petitioner may develop clear and convincing evidence by way of a hearing in federal court, if he satisfies the prerequisites for that hearing found in 28 U.S.C. § 2254(e)(2). *Lambert*, 387 F.3d at 235. In the final analysis, even if a state court's individual factual determinations are overturned, the remaining findings must still be weighed under the overarching standard of § 2254(d)(2). *Lambert*, 387 F.3d at 235-36.

within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation omitted).

Second, the petitioner must show that counsel's deficient performance "prejudiced the defense" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687. That is, the petitioner must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id.* at 694, but it is less than a preponderance of the evidence. *Id.* at 693, 694.

If the petitioner fails to satisfy either prong of the *Strickland* test, there is no need to evaluate the other part, as his claim will fail. *Id.* at 697. Further, counsel will not be found ineffective for failing to present an unmeritorious claim or objection. *Johnson v. Tennis*, 549 F.3d 296, 301 (3d Cir. 2008).

### 2. Claim One – Trial Counsel Ineffective for Failing to File a Motion to Suppress Identification Testimony from Two Commonwealth Witnesses – Lacks Merit

Petitioner claims that trial counsel rendered ineffective assistance by failing to file a motion to suppress his identification as a perpetrator by Micheline Medica and Joseph DeJesus. Pet. Mem. at 9-23. The Commonwealth responds that Petitioner's claim fails under the AEDPA standard. Resp. at 9-24. This court agrees.[7]

The Superior Court found that trial counsel was not ineffective, inasmuch as a suppression motion would have been denied on the ground that Petitioner's challenges to

---

[7] The Commonwealth addresses the merits of this and all of Petitioner's claims. Further, the Superior Court addressed the merits of all the ineffective assistance claims on PCRA appeal, *see* 2009 Super. Ct. Op. at 3-10, and the *Brady* claim on direct appeal. *See* 2005 Super. Ct. Op. at 8-11. Hence, all of Petitioner's claims are exhausted and ripe for review. *See Lambert*, 387 F.3d at 233-34.

Medica's and DeJesus' identifications of him went to the weight, not admissibility, of their testimony. 2009 Super. Ct. Op. at 5 (citing *Commonwealth v. Beale*, 665 A.2d 473 (Pa. Super. Ct. 1995)). The state court further concluded that Medica's identification would not have been suppressed, because: (1) she explained at trial that she had initially failed to identify Petitioner as a result of the trauma caused by the crime; and (2) she knew Petitioner previously and recognized his clothes and distinctive voice. *Id.* at 6. Likewise, DeJesus' identification would not have been suppressed, because he, too, knew Petitioner previously and recognized his clothes and distinctive voice. *Id.* These additional factors confirm that the eyewitness identifications of Petitioner were not based on suggestive police tactics.

The Superior Court's decision to resolve Petitioner's ineffective assistance claim on the ground that there was no merit to the suppression issue that counsel had omitted was a reasonable application of the *Strickland* standard, because the Third Circuit has held that an attorney cannot be ineffective for failing to pursue a meritless claim. *See Johnson*, 549 F.3d at 301. The question remains whether the state court's resolution of the omitted suppression claim was reasonable.

When the police conduct an unduly suggestive photo array or other pre-trial investigatory procedure that leads the witness to identify a particular person as the perpetrator of a crime, the Due Process Clause is triggered. *Perry v. New Hampshire*, 132 S. Ct. 716, 720 (2012). To offend the constitution, the police procedure must be both suggestive and unnecessary. *Id.* at 724. Even if these two factors are present, there is no due process violation – and the witness will be allowed to make an in-court identification – provided that the totality of the circumstances reveal that the witness' identification of the perpetrator is reliable. *Id.* at 724-25 (citing *Manson v. Brathwaite*, 432 U.S. 98, 110 (1977)). Reliable identifications should be

presented to the jury, lest guilty defendants go free. 132 S. Ct. at 724 (citing *Manson*, 432 U.S. at 112, 113). Relevant, but non-exclusive, factors to be considered for purposes of evaluating the reliability of an identification are: (1) the witness' opportunity to view the perpetrator at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the perpetrator; (4) the witness' level of certainty concerning the identification; and (5) the time lapse between the crime and the confrontation. *Id.* at 725 n.5 (citing *Manson*, 432 U.S. at 114).

The Superior Court did not did not cite *Manson*, or any other U.S. Supreme Court precedent, [8] yet, that does not preclude application of the AEDPA standard. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011); *Priester v. Vaughn*, 382 F.3d 394, 398 (3d Cir. 2004). Petitioner can surmount the § 2254(d)(1) bar to relief only if "there was no reasonable basis for the state court to deny relief." 131 S. Ct. at 784. That is, if reasonable jurists could disagree about whether U.S. Supreme Court precedent would allow the identification testimony, habeas relief is barred. *Id.* at 786.

In this case, the Superior Court relied upon two eyewitnesses who knew Petitioner before the crime and recognized his clothing and distinctive voice. 2009 Super. Ct. Op. at 6. In so doing, the state court did not employ any of the *Manson* factors. However, the *Manson* factors are not exclusive, 132 S. Ct. at 725 n.5, and the factors the Superior Court cited are indicative of a high degree of reliability, particularly the fact that both witnesses knew Petitioner and recognized his distinctive voice.[9] Since *Manson* is a totality of the circumstances test,

---

[8] The Superior Court could not have cited *Perry*, since it was decided three years after the Superior Court opinion was issued. This court has cited to sections of *Perry* which re-state the U.S. Supreme Court's pre-existing holdings concerning the due process standard.

[9] The court recognizes that the perpetrator identified as Petitioner wore a mask during the crimes and that Medica and DeJesus did not identify Petitioner as a participant until approximately two weeks after the crime. Obviously, these facts detract from the reliability of their identifications of Petitioner, but not to the degree that reasonable jurists would necessarily conclude that their in-court identifications had to be barred by the Due Process Clause,

reasonable jurists could find that the state court applied the relevant test correctly.[10] Hence, the AEDPA standard bars relief. *See Harrington*, 131 S. Ct. at 786.

        3.      **Claim Two – Trial Counsel Ineffective for Failing to Cross-Examine William Fiorillo with a Prior Inconsistent Description of Petitioner – Lacks Merit**

Petitioner claims that trial counsel rendered ineffective assistance when she failed to cross-examine William Fiorillo with two descriptions of Petitioner he had provided to the police that allegedly differed from Petitioner's actual appearance. Pet. Mem. at 23-27. The Commonwealth responds that Petitioner's claim fails under the AEDPA standard. Resp. at 24-30. This court agrees.

The Superior Court resolved Petitioner's claim as follows. First, the inconsistencies between Petitioner's appearance and the descriptions Fiorillo gave that Petitioner challenged[11] were trivial and the product of pressure to give a description immediately after the crime. 2009 Super. Ct. Op. at 4. Second, trial counsel cross-examined Fiorillo on factors that were more relevant to his ability to identify Petitioner – the fact that Fiorillo was on the third floor of his apartment when he saw the defendants, the dark lighting conditions at the time and the discrepancies between his police statement and his preliminary hearing testimony. *Id.* Third, Fiorillo's identification was cumulative of the three other witnesses who identified Petitioner. *Id.*

---

which the Supreme Court has characterized as a draconian sanction. *Perry*, 132 S. Ct. at 724 (citing *Manson*, 432 U.S. at 113).

[10] Petitioner cites federal district court and circuit court cases and one state court case to support his assertion that the Superior Court erroneously resolved his due process claim. *See* Pet. Mem. at 10-22. These cases cannot be relied upon to surmount the AEDPA bar to relief. *Renico*, 130 S. Ct. at 1865-66. Furthermore, the relevant question is not whether the state court correctly resolved Petitioner's due process claim, instead, the focus is on whether the state court reasonably resolved the claim. *See Harrington*, 131 S. Ct. at 785. This court concludes that the Superior Court did so, hence, habeas relief is barred.

[11] Petitioner challenged Fiorillo's description of Petitioner on the night of the crime and a description he gave during a co-defendant's line-up. 2009 Super. Ct. Op. at 3-4.

The AEDPA standard does not require that the state court's resolution of Petitioner's claim be correct. *See Harrington*, 131 S. Ct. at 785 (citing *Williams*, 529 U.S. at 410). That is, the AEDPA standard does not focus on whether trial counsel was ineffective. *Id.* Rather, this court must decide what arguments or theories supported, or could have supported, the state court's decision and then determine whether fair-minded jurists could disagree that those arguments or theories are consistent with U.S. Supreme Court precedent. *Id.* at 786. Under this doubly deferential standard, *see id.* at 788, this court finds that the Superior Court's conclusion should be sustained.

First, the fact that trial counsel cross-examined Fiorillo on other matters that were germane to his ability to correctly identify Petitioner, despite failing to use additional avenues of cross-examination, supports the conclusion that counsel's performance was adequate under the first part of the *Strickland* standard, particularly since counsel is presumed to be effective. 466 U.S. at 689. S*trickland* does not require that counsel render the best possible performance, merely one that is adequate, so that the trial is fair. *See id.* Under the doubly deferential AEDPA standard, counsel's performance must be deemed reasonable. Second, the fact that other witnesses also identified Petitioner makes it much less likely that a reasonable jury would have acquitted Petitioner if counsel had pursued the omitted cross-examination, hence, it was reasonable to conclude that Petitioner suffered no prejudice. *See id.* at 695-96 (explaining that the totality of the evidence must be considered when evaluating prejudice).

**4.     Claim Three – Ineffective Assistance of Counsel for Failing to Present Alibi Witnesses – Lacks Merit**

Petitioner claims that trial counsel was ineffective for failing to call Petitioner's sister and mother as alibi witnesses. Pet. Mem. at 27-33. The Commonwealth responds that the state court reasonably determined that the claim lacks merit. Resp. at 30-35. This court agrees.

11

The Superior Court concluded that Petitioner's claim lacked merit for several reasons. First, the trial court asked Petitioner if there were any additional witnesses he wished to call. 2009 Super. Ct. Op. at 6 (citing N.T. 9/23/02 at 909). Petitioner responded that there were not.[12] *Id.* Since Petitioner agreed with counsel that no alibi witnesses would be called, his claim that trial counsel was ineffective for failing to call them lacked merit. *Id.* (citing *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002)). Next, trial counsel acted reasonably in failing to call the witnesses, because: (1) Petitioner's mother was unable to state with certainty that Petitioner remained at home during the time of the crime; and (2) trial counsel testified that she did not present any alibi testimony, because she thought the prosecution's case was weak and she did not want to risk exposing the alibi witnesses to cross-examination, which would shift the jury's attention away from the prosecution's deficiencies. *Id.* at 7 (citing N.T. 4/1/03 at 83, 125-35).

The state court's first explanation is reasonable, hence, this court declines to address the others. The trial record reveals that Petitioner agreed with trial counsel's decision not to call alibi witnesses.[13] (N.T. 9/23/02 at 909-10). Hence, it is difficult to see how Petitioner could plausibly argue that he has met the first part of the *Strickland* test. *See* 466 U.S. at 691 (explaining that the reasonableness of counsel's decisions are substantially influenced by her client's actions or statements); *id.* at 689 (explaining that counsel is presumed to have acted effectively). Petitioner has not cited any U.S. Supreme Court precedent holding that an attorney

---

[12] The trial court asked Petitioner and his two co-defendants the following question:
> Now, were there any witnesses that any of you wanted to call or anything that you've discussed with your counsel that has not happened during this trial?

(N.T. 9/23/02 at 909-10). Petitioner responded, "No." *Id.* at 910.

[13] Petitioner asserts, *inter alia*, that the state court's reliance on Petitioner's acquiescence in trial counsel's decision not to call alibi witnesses does not constitute a merits ruling entitled to AEDPA deference. Reply Memorandum ("Reply") at 16-17. Instead, he maintains that state court's first explanation is a procedural ruling that is not an adequate and independent bar to habeas relief. *Id.* at 17-19. This court disagrees and concludes that the state court's first explanation is a merits resolution, hence, it is entitled to deference. The Superior Court relied upon *Paddy*; in that case, the Pennsylvania Supreme Court concluded that a claim of counsel infectiveness based on the failure to call alibi witnesses lacked merit, because the defendant had agreed with counsel's decision not to call the witnesses. *Paddy*, 800 A.2d at 316. This is a merits determination, which justifies the conclusion that the Superior Court's first explanation was also on the merits.

12

could render ineffective assistance by omitting evidence that his client agreed to omit. Absent such precedent, Petitioner cannot obtain habeas relief under the AEDPA standard. *Renico*, 130 S. Ct. at 1865-66; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (explaining that a state court does not act unreasonably under the AEDPA standard when it fails to apply a specific rule that the U.S. Supreme Court has not clearly established). Accordingly, this court concludes that the AEDPA standard bars relief.

### 5. Claim Four – Ineffective Assistance of Counsel for Failing to Call Takey Taylor as a Defense Witness – Lacks Merit

Petitioner claims that trial counsel was ineffective for failing to call Takey Taylor as a defense witness. Pet. Mem. at 33-38. The Commonwealth responds that the claim lacks merit under the AEDPA standard. Resp. at 35-40. This court agrees.

The Superior Court resolved that trial counsel acted reasonably in failing to call Takey Taylor as a witness, because Taylor would have been an unreliable, unwilling witness. 2009 Super. Ct. Op. at 8-9. First, Taylor gave several, inconsistent versions of the crimes. *Id.* at 9. At his guilty plea colloquy, Taylor initially stated that he acted alone. *Id.* When the trial court informed him that it could not accept his guilty plea, because one of the charges was conspiracy, Taylor responded he had one accomplice, Darnell. *Id.* (citing N.T. 9/16/02 at 28-32). Later, at a post-trial evidentiary hearing for Petitioner and David Taylor (Takey Taylor's brother), Takey Taylor stated that Petitioner and his brother David were innocent, but that co-defendant Todd White had assisted him, along with James Lewis and someone named Greg. *Id.* (citing N.T. 3/6/03 at 16). Moreover, Taylor was a volatile witness, who insulted and threatened the court and the prosecutor, *id.* (citing N.T. 3/6/03 at 21), this conduct would tend to make the jury distrust him. *Id.* Finally, as a co-felon who had already pled guilty, Taylor's testimony would be

13

considered with great caution. *Id.* (citing *Commonwealth v. Tervalon*, 345 A.2d 671, 675 (Pa. 1975)).

The state court's conclusion that trial counsel acted reasonably in failing to call Takey Taylor was reasonable, because he would have been a horrible witness. On March 6, 2003, the trial court held a hearing to consider the claim of Petitioner and David Taylor (Takey Taylor's brother) that they were innocent. Takey Taylor commenced his poor behavior by referring to James Lewis – the person Petitioner contends actually committed the offenses instead of him – with an obscenity. (N.T. 3/6/03 at 17). Taylor then responded to the prosecutor's first question with an obscene epithet. *Id.* at 20. He repeatedly responded with obscenities, when questioned by the prosecutor. *Id.* at 20-21. During this diatribe, Taylor told the prosecutor that "you will get yours." *Id.* at 20. At the conclusion of Taylor's obscene, threatening tirade, the trial court asked Taylor a question, to which he responded with an obscene epithet, which misstated the judge's ethnicity.[14] *Id.* at 21. Finally, prior to exiting the stand, Taylor addressed the prosecutor directly. *Id.* at 75. After asserting, yet again, that Petitioner and his brother were innocent, he concluded as follows:

> I might have said what I said to you, you know. But in the long run, man, you know, everybody have their day. Just like we got judged on the day.

*Id.* at 76.

No reasonable attorney would have wanted to put Takey Taylor on the stand. His obscene performance on March 6, 2003 justifies trial counsel's failure to put him on the stand. Furthermore, Taylor had repeatedly changed his testimony concerning how many people participated in the Ten Spot Bar crimes. This made him an unreliable witness, as the Superior

---

[14] Taylor used an epithet, which is employed to demean African-Americans, when responding to the trial judge. The trial judge is Hispanic, but is not black.

14

Court reasonably found. In addition, trial counsel was questioned about why she did not call Takey Taylor as a witness. She stated that, upon learning that Taylor would plead guilty on September 16, 2002, she approached his attorney to inquire whether Taylor could testify on behalf of Petitioner. (N.T. 4/1/03 at 38-39). Taylor's attorney told her that Taylor was not available to testify; counsel would advise Taylor not to testify and to invoke his Fifth Amendment right not to incriminate himself. *Id.* at 39-40. Trial counsel accurately testified that it would have been unethical for her to attempt to speak to Taylor directly, since he was represented by counsel.[15] *Id.* at 39. In light of this undisputed evidence, it was impossible for trial counsel to call Takey Taylor as a witness. Hence, there is no possibility that she acted unreasonably in failing to call Taylor. Even under *de novo* review, this claim would fail.

      **6.     Claim Five – Ineffective Assistance of Counsel for Failing to Obtain Evidence Concerning Police Investigation of Another Possible Perpetrator – Lacks Merit**

Petitioner claims that trial counsel was ineffective for failing to obtain evidence that the police had investigated whether Anthony Davis was the perpetrator identified as Tino.[16] Pet. Mem. at 38-41. The Commonwealth responds that the state court reasonably rejected this claim. Resp. at 40-44. This court agrees.

The Superior Court concluded that Petitioner suffered no prejudice from trial counsel's failure to inquire further about Davis, who was eliminated as a suspect since no witness could identify him as one of the perpetrators. 2009 Super. Ct. Op. at 10. This was a reasonable resolution of Petitioner's claim. Petitioner has no proof that Davis was actually the perpetrator, instead of himself. Indeed, he maintains herein that James Lewis is actually the perpetrator that

---

[15] Pennsylvania Rule of Professional Conduct 4.2 states that an attorney representing a client in a matter cannot communicate about the matter with another person represented by counsel, unless the other person's attorney has consented, or the attorney is authorized by law to do so or by a court order. Hence, trial counsel correctly testified that she was ethically barred from speaking to Takey Taylor, since his attorney would not consent.

[16] Petitioner does not dispute that his nickname is Tino.

15

the witnesses identified as Petitioner. Since Davis was not a viable suspect, it was reasonable for the Superior Court to conclude that Petitioner was not prejudiced by trial counsel's failure to make any further inquiries about Davis. Hence, Petitioner's claim fails.

**C.** ***Brady* Claim**

    **1.** **Standard of Review for *Brady* Claims**

The three elements of a *Brady* claim are:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either wilfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Prejudice is the materiality requirement, *id.* at 282, to wit, the defendant must show that there is a reasonable probability that, if the omitted evidence had been disclosed to him, the outcome of the proceeding would have differed. *See Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). In order for omitted evidence to be material, it is not necessary that the evidence establish by a preponderance that its disclosure would have resulted in an acquittal. *Id.* at 434. Instead, the omitted evidence must detract from the reviewing court's confidence in the outcome that the jury did reach. *Id.* The requisite lack of confidence may exist although sufficient record evidence to convict remains, even after discounting the inculpatory evidence impacted by the undisclosed evidence. *Id.* at 434-35. Materiality is evaluated by examining the collective effect of all the undisclosed evidence, not by evaluating the impact of each item of undisclosed evidence separately. *Id.* at 436. However, to determine whether any particular piece of undisclosed evidence is favorable, each item is evaluated separately. *Id.* at 436 n.10.

2. **Claim Six – *Brady* Violation Based on the Prosecution's Failure to Disclose That the Police Had Once Considered James Lewis, Instead of Petitioner, as a Perpetrator – Lacks Merit**

Petitioner claims that the prosecution violated *Brady* by failing to disclose that the police had investigated whether James Lewis, not Petitioner, was involved in the robbery. Pet. Mem. at 41-44. The Commonwealth responds that this claim lacks merit under the AEDPA standard. Resp. at 44-48. Applying *de novo* review, this court finds that the claim lacks merit.

The Superior Court found that Petitioner's *Brady* claim lacked merit, because the omitted evidence[17] was neither favorable to Petitioner nor material. 2005 Super. Ct. Op. at 9. The state court found that the evidence was not favorable to Petitioner, because the police concluded that Lewis was not a perpetrator; hence, the undisclosed information could not have been used to exculpate Petitioner or to impeach any witness. *Id.* at 10. Similarly, since Lewis was not involved in the Ten Spot Bar crimes, there is not a reasonable probability that the result of the trial would have been different, if the omitted evidence had been disclosed prior to trial. *Id.*

Applying 28 U.S.C § 2254(d)(2), this court finds that the Superior Court unreasonably found that the police had concluded that Lewis was not a perpetrator. Instead, the record reveals that: (1) the police barely investigated Lewis' involvement; (2) there is no evidence that any police officer actually concluded that Lewis was not a perpetrator; and (3) the police simply stopped investigating Lewis after August 2001.

At a post-trial hearing, the lead investigator for the Ten Spot Bar robbery, Officer Cheryl Monzo, testified that she was unaware of the tip concerning Lewis prior to trial and only learned of it in March 2003, well after the September 2002 trial. (N.T. 4/1/03 at 17-18). She confirmed

---

[17] The omitted evidence the Superior Court considered was an anonymous tip that "Jay" – a reference to James Lewis – and "Teke" – which is the nickname for Takey Taylor – were involved in the Ten Spot crimes and that revealed the address for James Lewis. 2005 Super. Ct. Op. at 8-9. Inspector Joseph Mooney testified that he received the tip from a police officer in August 2001. (N.T. 4/1/03 at 29, 35).

that the address associated with the tip was in the same part of Philadelphia where Todd White, David Taylor and Takey Taylor lived.[18] *Id.* at 20-21. Further, on August 8, 2001, Lewis' fingerprints were submitted for comparison with fingerprints recovered from the scene. *Id.* at 9-10, 12, 15. Officer Monzo testified that she did not make that request, but that Detectives Gage or O'Malley may have requested the comparison. *Id.* at 15. She also testified that she only learned that the fingerprint comparison request had been made in February or March 2003, several months after trial. *Id.* at 16. Although Lewis' fingerprints did not match any retrieved from the crime scene, neither did fingerprints from Petitioner and his three co-defendants. (N.T. 4/4/03 at 7); Reply at 21-22 (citing Exhibit H).[19] Furthermore, the person who conducted the fingerprint analysis testified that the negative results were not communicated to the police officers investigating the Ten Spot Bar crime at the time the analysis was conducted in August 2001. (N.T. 4/4/03 at 10-11). Hence, there is no evidence that the police investigation of Lewis is what resulted in him not being charged as a perpetrator. The limited investigation conducted of Lewis arguably left him a viable suspect[20] and there is no evidence that any police officer concluded affirmatively that Lewis was not a participant. All the record reveals is that, after August 2001, investigation of Lewis ceased and, instead, police arrested Petitioner.

There is no factual support in the record for the Superior Court's finding that the police concluded that Lewis was not involved in the Ten Spot Bar robbery. Absent record evidence, the presumption of correctness ordinarily afforded to the state court's fact finding, *see* 28 U.S.C. § 2254(e)(1), is rebutted. *Wiggins*, 539 U.S. at 528. In addition, the state court's resolution of the claim is unreasonable, under § 2254(d)(2). *Wiggins*, 539 U.S. at 528. Hence, this court must

---

[18] Indisputably, Petitioner lived in New Jersey at the time of the Ten Spot Bar crimes.
[19] Exhibit H to the Reply is a copy of the August 8, 2001 request for fingerprint comparison for Petitioner, Todd White, David Taylor, Takey Taylor and James Lewis.
[20] Lewis, unlike Petitioner, lived close to Takey Taylor, Davis Taylor and Todd White. Further, like all defendants, none of his fingerprints matched ones recovered from the scene.

decide, *de novo*, whether Petitioner's *Brady* claim has merit. *See Boyd v. Waymart*, 579 F.3d 350, 336 n.7 (3d Cir. 2009) (Scirica, J., concurring)[21] (explaining that, when a state court's adjudication of a habeas claim is based upon an unreasonable determination of the facts such that § 2254(d)(2) does not bar habeas relief, the claim must be reviewed *de novo*).

This court concludes that Petitioner's *Brady* claim lacks merit, because Petitioner cannot establish that the suppressed evidence was material. The suppressed evidence is: (1) a hand written note which associates "Jay" with "Teke" and an address that James Lewis used;[22] and (2) a police report indicating that latent fingerprints recovered from the crime scene do not match Petitioner, Takey Taylor, David Taylor, Todd White and James Lewis. The police suppressed no other evidence concerning Lewis, because the police had no other evidence. While the suppressed evidence might have been helpful to trial counsel when she was trying to prove that Petitioner was not involved in the Ten Spot Bar crimes, that limited evidence is not, by itself, material, because it does not detract from the overall persuasiveness of the extensive evidence the Commonwealth was able to produce to establish that Petitioner was the perpetrator identified as Tino.

Moreover, trial counsel expressed her opinion that, despite her belief that Petitioner was not involved in the crimes, all three witnesses who had identified Petitioner as a perpetrator and Fiorillo, who had identified Petitioner as being outside the bar with Takey Taylor, David Taylor and Todd White shortly before the crimes occurred, were quite convinced by the time of trial that he was involved. (N.T. 4/1/03 at 80). For that reason, she chose not to show these witnesses a

---

[21] *Boyd* was resolved by the court sitting *en banc*. *Boyd* resulted in a brief *per curiam* opinion, which announces the court's conclusions, a concurring opinion by Judge Scirica and dissenting opinions by Judges Sloviter and Hardiman. The *per curiam* opinion of the court announces that Judge Scirica's concurring opinion correctly describes how Boyd's ineffective assistance of counsel claim should be reviewed under the AEDPA standard. *See Boyd*, 579 F.3d at 332.

[22] This address is close to where Takey Taylor, David Taylor and Todd White lived at the time of the Ten Spot Bar crimes.

photograph of James Lewis, the prosecutor had provided her, to see if it would shake their identification of Petitioner. *Id.* Given counsel's admission that it would have been futile to use the fruit of the suppressed evidence, there is no basis to conclude that there is a reasonable probability of a different outcome if the police had disclosed, prior to trial, the limited evidence they possessed concerning James Lewis. Accordingly, the suppressed evidence is not material and Petitioner's *Brady* claim fails.

### III. CONCLUSION

All of Petitioner's claims lack merit under the appropriate standards of review. Reasonable jurists would not debate this court's disposition of his claims; therefore a certificate of appealability should not issue. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, I make the following:

### RECOMMENDATION

**AND NOW**, this 28th day of February, 2013, for the reasons contained in the preceding Report, it is hereby **RECOMMENDED** that all of Petitioner's claims be **DENIED**, without an evidentiary hearing. Petitioner has neither demonstrated that any reasonable jurist could find this court's rulings debatable, nor shown denial of any federal constitutional right; hence, there is no probable cause to issue a certificate of appealabilty.

Petitioner may file objections to this Report and Recommendation within fourteen (14) days of being served with a copy of it. *See* Local R. Civ. P. 72.1(IV). Failure to file timely objections may constitute a waiver of any appellate rights.

It be so **ORDERED**.

                                       */s/ Carol Sandra Moore Wells*
                                       CAROL SANDRA MOORE WELLS
                                       Chief United States Magistrate Judge